605 P.2d 236

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Genaro TRUJILLO, Defendant-Appellant.**

No. 3751.

Court of Appeals of New Mexico.

April 12, 1979.

Jeff Bingaman, Atty. Gen., Michael A. Kauffman, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Richard J. Knott, Corrales, Ken Cullen, Albuquerque, for defendant-appellant.

## OPINION

WOOD, Chief Judge.

Defendant appeals his conviction of trafficking in heroin. Section 30–31–20, N.M.S.A.1978. 1. Three issues are answered summarily. 2. We discuss cross-examination of defendant on the basis of his involuntary statement.

*Issues Answered Summarily*

(a) Defendant was scheduled for trial on September 26, 1977 but did not appear for trial. Testimony as to the chain of custody of the heroin brought out that the heroin had been brought to court previously (on September 26, 1977). The claim that there was prosecutor misconduct by eliciting the chain of custody testimony is frivolous.

Officer Gallegos testified as to defendant's nonappearance for the scheduled trial in September, 1977, and that defendant was arrested in Utah within "the past several months" prior to trial on May 5, 1978. Defendant recognizes that evidence of flight is admissible, but asserts that such evidence was improperly admitted in this case. There was no objection to the "flight" evidence at trial; the propriety of the "flight" evidence is not properly before us for review. N.M.Crim.App. 308. We answer one of defendant's arguments under this issue because of defendant's misunderstanding of "flight" evidence.

■ Defendant contends there must be evidence of "consciousness of guilt" in order for "flight" evidence to be admissible. "Flight" evidence is admissible because that evidence "tends to show consciousness of guilt." *State v. Smith,* 89 N.M. 777, 558 P.2d 46 (Ct.App.1976), rev'd on other grounds, *Smith v. State,* 89 N.M. 770, 558 P.2d 39 (1976). "Consciousness of guilt" is an inference that may be drawn from the "flight" evidence and is not an evidentiary predicate for the admission of "flight" evi-

dence. "Flight" evidence is admissible under Evidence Rule 404(b) "because probative of an absence of accident on defendant's part . . . ." *State v. Smith,* supra.

(b) When asked on direct examination if he had sold heroin on the date charged, defendant answered: "No. I can take a lie detector test too." The prosecutor cross-examined defendant on whether he had taken a lie detector test. The cross-examination brought out that defendant had taken a test and that the results of the test were inconclusive.

■ Defendant contends the cross-examination was prosecutor misconduct because the prosecutor knew that the results of an inconclusive test were inadmissible, because irrelevant.

*State v. Bell,* 90 N.M. 134, 560 P.2d 925 (1977) holds that the results of an inconclusive test are inadmissible because such results prove nothing. Here, however, defendant had sought to enhance his credibility by his offer, in the presence of the jury, to take the test. The prosecutor's cross-examination concerning a prior inconclusive test was a proper attack on defendant's credibility. Evidence Rule 607. The inconclusive results of the prior inconclusive test became available to the prosecutor when defendant interjected his willingness to take the test into the trial. See *State v. Gutierrez,* 91 N.M. 54, 570 P.2d 592 (1977).

■ (c) Defendant's testimony raised the question of mistaken identity; that the agent who purchased the heroin was mistaken as to the person who sold the heroin. Some of the questioning concerning identity involved defendant's tatoos and the possible similar markings of another person present at the scene of the heroin sale. A nonresponsive answer of defendant interjected that the police could have obtained information about defendant's tatoos from prior police reports; "it is not the first time that I have been pictured by the cops." After this answer and while questioning defendant on the identity issue, the prosecutor

asked defendant if he had been arrested by Officer Byford for selling marijuana. Defendant's motion for a mistrial was denied "in the posture in which the question was asked." The "posture" was defendant's mistaken identity defense and defendant's interjection that "his tatoo was of record . . . ." However, the trial court ruled that questions concerning marijuana sales were irrelevant, and instructed the jury to disregard the question and answer concerning a marijuana sale.

Subsequently in the prosecutor's cross-examination, by artful questions concerning defendant's sale of controlled substances, the prosecutor elicited that defendant had sold marijuana to Officer Byford. The trial court again sustained defendant's objection, and again ruled that the marijuana sale was irrelevant.

Questioning concerning the marijuana sale, after the trial court's ruling that the sale was irrelevant, was prosecutor misconduct. We need not decide whether this misconduct was reversible error; however, see *Albertson v. State,* 89 N.M. 499, 554 P.2d 661 (1976). This question is not decided because the cross-examination of defendant concerning his statement requires a new trial.

*Cross-Examination of Defendant Concerning His Statement*

At an evidentiary hearing, prior to trial, it was brought out that an agreement was reached between the State and the defendant. The agreement was that defendant was to attempt to "set up" another individual in connection with heroin offenses and that defendant's punishment in this case would vary, dependent upon defendant's efforts. There is evidence that defendant did not carry out his agreement; however, defendant's nonperformance is not involved in this issue.

The transcript indicates that shortly after the agreement was made, defendant made statements which tended to incriminate him in connection with the offense in this case. There is nothing indicating these incriminating statements were made after defendant breached his agreement. The trial court's view, which is not attacked on appeal, is that "defendant made these statements with the knowledge that he had a deal . . . .."

The trial court ruled the statements were involuntary and would not be admissible in the State's case-in-chief. The trial court reserved a ruling as to whether the statements were admissible for impeachment purposes.

Having denied, on his direct examination, that he sold the heroin in question, defendant was cross-examined concerning the statement that had been excluded from evidence during the State's case-in-chief. The trial court permitted this examination because the *Miranda* (*Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) warnings had been given. Defendant asserts this cross-examination was error. We agree.

■ There are two prerequisites for the admissibility of statements—a prima facie showing of voluntariness and compliance with the advice of rights required by *Miranda v. Arizona,* supra. *State v. Gallegos,* 92 N.M. 336, 587 P.2d 1347 (Ct.App.1978).

■ Where the requirements of *Miranda* have not been met, a defendant's statement may not be introduced in the case-in-chief, but may be used to impeach a defendant who testifies, provided the statement meets other legal standards permitting use of the statement. *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); see *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). In this case there is no issue concerning compliance with the *Miranda* requirements.

The issue is compliance with another legal standard; the standard of voluntariness. The trial court ruled that defendant's statements, made in connection with the "deal" involving the crime charged, were involuntary. See *State v. Aguirre,* 91 N.M. 672, 579 P.2d 798 (Ct.App.1978). There is no issue as to the legal correctness of this ruling. The question is whether the State could use the involuntary statement for purposes of impeachment.

*State v. Turnbow,* 67 N.M. 241, 354 P.2d 533, 89 A.L.R.2d 461 (1960) states the better reasoned rule to be:

> Involuntary confessions of accused persons are inadmissible to impeach them as witnesses on the same ground that hearsay and all other incompetent evidence is inadmissible to impeach other witnesses, because they are unworthy of belief.

■ The State asserts the above-quoted language was overruled by implication in U.J.I. Crim. 40.34. We disagree. U.J.I. Crim. 40.34 is an instruction approved for use when a statement has been used for impeachment purposes; the instruction does not state when it is proper to use a statement for impeachment purposes.

The State asserts that U.J.I. Crim. 40.34 was based on *Harris v. New York,* supra. We assume that it was, but this does not aid the State. As the Committee Commentary to U.J.I. Crim. 40.34 points out, voluntariness of the statement was not an issue in *Harris.*

The State would distinguish between an involuntary statement and a statement that is not trustworthy. Relying on language in *Harris v. New York,* supra, the State contends that a statement may be trustworthy even if involuntary. *State v. Turnbow,* supra, answered this contention by stating that an involuntary statement is unworthy of belief.

The statement of the "better reasoned rule" in *State v. Turnbow,* supra, in 1960, is now federal constitutional law. In *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), defendant's involuntary statement was used in an effort to impeach his trial testimony. *Mincey* states: "But *any* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law . . .." (Emphasis in original.) See also *New Jersey v. Portash,* 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979).

■ The State contends that a comment in *State v. Turnbow,* supra, authorized the use of defendant's statements for impeachment purposes. The comment is:

> Absent a proper showing to the satisfaction of the court that the confession is voluntary in point of law, the state may initially cross-examine a defendant as to whether he has made a statement contrary to his testimony, but upon his denial thereof or his claimed inability to recall, may proceed no further.

The State's contention, based on the above-quoted sentence, is without merit.

The latter part of the comment deals with the procedure for use of prior statements under procedural rules in effect at the time *State v. Turnbow,* supra, was decided. Those procedural rules are no longer in effect; Evidence Rule 613 now governs the use of prior statements.

The phrase "[a]bsent a proper showing . . . that the confession is voluntary" does not mean that a statement, held to be involuntary, may nevertheless be used for impeachment purposes in disregard of the involuntariness ruling. Both *State v. Turnbow,* supra, and *Mincey v. Arizona,* supra, are to the contrary. The phrase is applicable only when a ruling as to voluntariness has not been invoked. Compare *State v. Gallegos,* supra.

■ Because the prosecutor used defendant's involuntary statement to impeach defendant's trial testimony, defendant was denied due process of law. The conviction is reversed; the cause is remanded with instructions to grant defendant a new trial.

IT IS SO ORDERED.

LOPEZ and WALTERS, JJ., concur.