605 P.2d 232

**STATE of New Mexico, Petitioner,**

v.

**Genaro TRUJILLO, Respondent.**

**No. 12505.**

Supreme Court of New Mexico.

Jan. 10, 1980.

Jeff Bingaman, Atty. Gen., Janice Marie Ahern, Asst. Atty. Gen., Santa Fe, for petitioner.

Richard J. Knott, Corrales, for respondent.

## OPINION

EASLEY, Justice.

Genaro Trujillo was convicted by a jury of heroin trafficking. The Court of Appeals reversed the conviction and remanded for a new trial. We granted certiorari. We affirm the reversal, but upon somewhat different grounds than those utilized by the Court of Appeals.

The issue is whether an incriminating statement made by Trujillo, which was made in the presence of police officers, his counsel, and an assistant district attorney shortly after a plea agreement was reached between the State and Trujillo, but which was not admitted in the State's case-in-chief, was improperly admitted to *impeach* Trujillo's testimony at trial. The Court of Appeals held that the statement was improperly admitted since the trial court had found the statement to have been made involuntarily, and cited *State v. Turnbow,* 67 N.M. 241, 354 P.2d 533 (1960).

It is unclear from the record whether the judge's ruling on the admissibility of the statement was based on a finding of involuntariness or on Rule 410, N.M.R.Evid. 410, N.M.S.A.1978. Regardless of the basis for the ruling, we hold that the statement was improperly admitted for impeachment purposes in the face of Rule 410, which excludes statements made in connection with plea negotiations in any subsequent proceeding.

The agreement between the State and Trujillo, which was reached with defense counsel present and after *Miranda* warnings had been given, provided that Trujillo should attempt to set up another individual for an arrest on heroin charges in exchange for Trujillo receiving from the State certain plea considerations. After this agreement was reached orally but before it was reduced to writing and while Trujillo was still in the presence of the assistant district attorney, a police officer and his counsel, an undercover agent walked into the room. The police officer asked Trujillo whether he recognized the agent. Trujillo identified the agent as the person to whom he had sold the heroin.

Trujillo allegedly did not fulfill his part of the agreement. He was subsequently re-arrested, pled not guilty, and stood trial. During a pre-trial hearing of a defense motion *in limine,* defense counsel attempted to preclude, on the basis of Rule 410, the admission of the incriminating statement made by Trujillo. The State did not contest the motion insofar as it went to the admissibility of the statement in its case-in-chief. The trial court ruled that the statement was inadmissible in the State's case-in-chief but reserved a ruling on whether it would be admissible for impeachment purposes. Against the advice of counsel, Trujillo took the stand during trial and denied making the heroin sale to the undercover agent. On cross-examination by the State, Trujillo was impeached with his prior inconsistent statement after the State had obtained the court's approval to do so. The court gave a cautionary instruction to the jury stating that the statement was to be considered only for impeachment purposes.

The interpretation of Rule 410 is a matter of first impression in New Mexico. The same rule is contained in the Rules of Criminal Procedure, N.M.R.Crim.P. 21(g)(6), N.M.S.A.1978. Since the two provisions are identical, our discussion applies equally to both. Rule 410 provides:

> *Evidence of* a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of *statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding* against the person who made the plea or offer. (Emphasis added.)

The State argues that the rationale in *Harris v. New York,* 401 U.S. 222, 91 S.Ct.

643, 28 L.Ed.2d 1 (1971), should apply by analogy to this Court's interpretation of Rule 410. The United States Supreme Court in *Harris* held that defendant's statements were admissible for impeachment purposes even though they were inadmissible in the State's case-in-chief under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Supreme Court stated that "[t]he shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Harris*, 401 U.S. at 226, 91 S.Ct. at 646.

Although *Harris* is persuasive in its reasoning, it dealt with a technical violation of *Miranda* and not with statements inadmissible under Rule 410. These two situations involve different policy considerations.

The State contends that although Rule 410 prohibits the admissibility of statements made during plea negotiations, it is a privilege which should not be extended to exclude the use of the statements for impeachment purposes. *United States v. Tesack*, 538 F.2d 1068 (4th Cir. 1976).

In *United States v. Tesack*, which is cited by the State in support of its argument, the defendant's withdrawn guilty plea was introduced to impeach the credibility of his co-defendant. Inexplicably, the court there did not mention Rule 410 in its analysis. Instead it reasoned that *Harris* permitted it to hold that the plea was properly admitted for impeachment purposes. The guilty plea and statement made in connection therewith had been made on the record in open court under oath.

We found no federal or state cases in which off the record statements made in connection with pleas or plea negotiations were ruled admissible or inadmissible for impeachment purposes based on a judicial exception to Rule 410 or on some similar rule. *But cf. People v. Cole*, 584 P.2d 71 (Colo.1978) (The Colorado statute prohibited only the *fact* that plea discussions took place not the statements themselves.); *State v. Anonymous*, 30 Conn.Sup. 181, 307 A.2d 785 (1973–74) (No similar rule existed in Connecticut.).

In addition, an examination of similar state statutes or rules reveals that, like the New Mexico rule, they are of recent vintage and have not yet been under the judicial microscope. Also, for the most part, they do not deal with the issue of impeachment. *See e. g.*, Ariz.R.Evid. 410; Cal.Evid. Code § 1153 (West 1966); Minn.R.Evid. 410; Wis.Stat.Ann. § 904.10 (West 1975). *But see* Mont.R.Evid. 410.

Rule 410 was adopted verbatim from the federal version of Rule 410 originally promulgated by the United States Supreme Court. Although this particular version of Rule 410 was never enacted by Congress for use in the federal courts, a brief survey of the history of the federal rule is illuminating to our present analysis. The history of Rule 410 is intertwined with the history of Rule 11(e)(6) of the Federal Rules of Criminal Procedure. The rules are the same textually, and when one has been amended, the other has been amended to conform.

When Rule 410 and Rule 11(e)(6) came under discussion in Congress, the major dispute which arose was whether statements made by a defendant in connection with pleas or plea negotiations could later be used to impeach him if he subsequently stood trial, took the stand, and testified inconsistently. 2 Weinstein's Evidence ¶ 410[01], at 410–412 (1979). This is precisely the situation we are faced with here.

The Senate, quoting *Harris, supra*, would have permitted "voluntary statements of an accused made in court on the record" to be used for impeachment purposes, as well as in a subsequent prosecution for perjury. S.Rep. No. 1277, 93d Cong., 2d Sess. 11, *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 7051, 7057. However, the House desired to limit the use of such statements to prosecutions for perjury if the statements were made under oath, on the record, and in the presence of counsel. H.R.Rep. No. 247, 94th Cong., 1st Sess. 7, *reprinted in* [1975] U.S.Code Cong. & Admin.News, pp. 674, 679. The conference committee adopted the House position on this issue. H.R.Rep. No. 414, 94th Cong.,

1st Sess. 10, *reprinted in* [1975] U.S.Code Cong. & Admin.News, pp. 713, 714. Thus, there was a repudiation by Congress of the *Harris* approach to the plea bargain process.

We agree with the Senate and the *Harris* Court that a defendant has the same duty as any witness under oath to speak truthfully on the stand, and that a court's primary function is truth finding.

However, the plain import of the language of Rule 410 is to prohibit the admissibility of statements made during plea negotiations in any proceeding. The other exclusionary rules which surround Rule 410 in the Rules of Evidence contain express exceptions to the general rule of inadmissibility. *See* N.M.R.Evid. 407, 408, 409, 411, N.M.S.A.1978. Rule 410 stands out among these rules because it contains no language which limits its exclusionary effect.

Rule 410 embodies the public interest in encouraging negotiations concerning pleas between the criminal defendant and the State. Guilty pleas are an essential part of our criminal justice system, and candor in plea discussions aids greatly in the reaching of agreements between the defendant and the State. This ultimately results in the speedy disposition of cases. A presidential commission discussed the role of plea bargaining as follows:

> The negotiated guilty plea serves ·important functions. . . . The quality of justice in all cases would suffer if overloaded courts were faced with a great increase in the number of trials. Tremendous investments of time, talent, and money, all of which are in short supply and can be better used elsewhere, would be necessary if all cases were tried.

President's Commission on Law Enforcement and Administration of Justice, *The Challenge of Crime in a Free Society,* 135 (1967). The United States Supreme Court has made it clear that similar policy considerations were influential in its willingness to approve plea bargaining. *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

The attorney for the State and the attorney for the defendant or the defendant acting pro se need to feel free to discuss the merits of the case, the alternatives for disposition, and the possible concessions each is willing to make. We interpret Rule 410 as closing the door on the admissibility of all of these matters as evidence at trial for either substantive or impeachment purposes.

For purposes of clarification, we wish to distinguish between the plea negotiation process and custodial police interrogations. As to the admissibility of statements made during each, Rule 410 applies to the former and established standards of voluntariness and relevancy apply to the latter. We are not making a decision as to whether Trujillo's statement meets the standard of voluntariness. Rule 410 does not set up standards of relevancy and trustworthiness, and we will not impose any on it. If a plea is never entered or entered and then withdrawn, at trial it is to appear as though the earlier plea and/or plea discussions never took place. The slate is wiped clean once plea negotiations fail or the defendant withdraws his plea.

We realize that some persons may be tempted to testify inconsistently with what they stated previously during plea discussions with the State. We do not condone these actions. But a weighing of conflicting policies demonstrates that the balance is tipped in favor of interpreting Rule 410 as the cloak of privilege around plea negotiation discussions.

The decision of the Court of Appeals is affirmed, and the cause is remanded to the district court for a new trial.

IT IS SO ORDERED.

SOSA, C. J., and PAYNE and FEDERICI, JJ., concur.