642 P.2d 178

STATE of New Mexico, Plaintiff-Appellee,

v.

Gary TURNER, Defendant-Appellant.

No. 5179.

Court of Appeals of New Mexico.

Dec. 1, 1981.

Rehearing Denied Dec. 15, 1981.

Certiorari Quashed March 9, 1982.

William C. Marchiondo, Marchiondo & Berry, P. A., Michael E. Vigil, Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Heidi Topp Brooks, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Judge.

Defendant was convicted of two counts of trafficking in cocaine by distribution. Section 30–31–20(A)(2), N.M.S.A.1978 (1980 Repl.Pamph.). We (1) answer all but one of defendant's appellate claims summarily, and (2) discuss the propriety of the compelled disclosure of a statement taken by an attorney.

*Issues Answered Summarily*

(a) Defendant's co-indictee was Lindley. The charges against Lindley were disposed of by plea agreement. In accepting Lindley's guilty plea, the trial court was informed, by Lindley, that defendant was involved. Defendant contends that Lindley's statements as to defendant's involvement prejudiced the trial court against defendant. Defendant also contends that prejudice against defendant is shown by the trial court's conduct throughout the trial. The transcript of Lindley's guilty plea hearing and the transcript of defendant's trial shows that defendant's claim is frivolous. The trial court's impartiality could not be reasonably questioned. *Gerety v. Demers*, 92 N.M. 396, 589 P.2d 180 (1978).

(b) Harden was defendant's counsel at arraignment on December 16, 1980. Trial was scheduled for March 16, 1981; defendant and Harden had notice of this trial date. On March 16, 1981, Harden was permitted to withdraw as counsel and a continuance was granted. The continuance was granted on the basis that a new trial date would be scheduled in the near future and new counsel would not be permitted to delay the trial. Attorney Marchiondo entered his appearance on March 19, 1981; trial was scheduled for April 6, 1981.

■ Defendant asserts that the trial court refused to consider *any* of the motions filed by Marchiondo. This assertion is frivolous; the motions were considered, at least one was granted.

■ (2) Marchiondo's request for a statement of facts, R.Crim.Proc. 9, was filed and heard immediately prior to trial on April 6, 1981. Defendant recognizes that this request was untimely, but contends that there was good cause to waive the time requirement, see R.Crim.Proc. 33(e), and that the trial court would not even consider whether good cause was shown. On appeal, defendant argues the reasons why Harden had not requested a statement of facts and the lateness of Marchiondo's appearance. The transcript of the hearing shows that "good cause" was considered. Marchiondo's assertion of good cause was the lateness of his appearance and lack of "opportunity to fully prepare all of the necessary motions * *." The record shows that Marchiondo filed other motions on March 26 and April 1, 1981. We cannot say that good cause was shown as a matter of law, or that the trial court erred in ruling that the requested statement of facts was untimely. *State v. Palmer*, 89 N.M. 329, 552 P.2d 231 (Ct.App. 1976).

■ (3) Marchiondo's motion for a continuance was denied. In claiming this was error, defendant asserts that the prosecutor did not disclose that Lindley would be called as a witness until March 24, 1981, that Lindley had refused to be interviewed by representatives of defendant, and that defendant did not have the opportunity to depose Lindley. The transcript shows that Harden knew, not later than March 15, 1981, that Lindley would be a prosecution witness. No motion to depose Lindley was ever filed. See R.Crim.Proc. 29. The matters relied on by defendant do not show that the trial court abused its discretion in denying Marchiondo's motion for a second continuance of the trial. *State v. Perez*, 95 N.M. 262, 620 P.2d 1287 (1980); *State v. Nieto*, 78 N.M. 155, 429 P.2d 353 (1967).

■ (c) Defendant did not disclose his witnesses to the prosecution in advance of trial. See R.Crim.Proc. 28. Defendant asserts the trial court refused to allow him to call witnesses on his behalf. The transcript shows to the contrary. Prior to the taking of any testimony, the trial court ruled that defendant could call character witnesses. As to two other potential witnesses—Bender and Thomas—the trial court indicated that they would not be permitted to testify. However, the trial court agreed that defendant might make a tender as to their testimony. During the trial defendant tendered Thomas' testimony and, after the tender, the trial court permitted Thomas to testify as a witness. Defendant never tendered the testimony of Bender. Harden testified that his notes of his interview with Bender were delivered to a representative of Marchiondo. There is no claim that Marchiondo did not know of the matters to which Bender could testify. Because the trial court was never informed as to Bender's possible testimony, we cannot hold there was error in excluding Bender as a witness. *State v. Bojorquez*, 88 N.M. 154, 538 P.2d 796 (Ct.App.1975).

■ (d) Defendant contends evidence of other "offenses" was improperly admitted. Testimony as to defendant's presence during certain activities at Lindley's house on August 9, 1980, defendant's statements to undercover agent Jones on August 25 and September 10, 1980, and Orosco's testimony concerning receipt of a white powder from defendant after Orosco asked for cocaine were properly admitted under Evidence Rule 404(b). These items were relevant because they tended to show defendant's knowledge and an absence of mistake or accident. These items tended to negate the defense claim that defendant had nothing to do with the cocaine transactions and the claim that defendant's presence was only a coincidence. The trial court did not violate Evidence Rule 403 in admitting this testimony. *State v. Schifani*, 92 N.M. 127, 584 P.2d 174 (Ct.App.1978); *State v. Allen*, 91 N.M. 759, 581 P.2d 22 (Ct.App.1978).

■ Defendant asserts, in connection with the testimony referred to in the preceding paragraph, that the trial court should have instructed the jury in accordance with U.J.I.Crim. 40.28. This instruction informs the jury as to the purpose of evidence concerning other wrongs and offenses. Use Note 1 to the instruction states the instruction is to be given "[u]pon request". There was no request for this instruction.

■ (e) Defendant complains of the admission of "evidence that the marijuana sold to Jones on August 14, 1980, came from Turner." Undercover agent Jones testified, on direct examination as a prosecution witness, that he purchased marijuana from Lindley on August 14, 1980, while waiting for the cocaine to be delivered. Defendant objected to this testimony as irrelevant. The objection was properly overruled because the marijuana purchase was simply an aspect of the cocaine transaction. Lindley testified about the August 14th transaction. It was defendant who brought out, on cross-examination of Lindley, that defendant supplied the marijuana to Lindley. Defendant may not complain of evidence which he injected into the case. *State v. Harrison*, 81 N.M. 324, 466 P.2d 890 (Ct. App.1970).

(f) Defendant contends the trial court erred in failing to impose sanctions on the prosecution for violation of rules of discovery. This contention goes to the testimony of undercover agent Jones and the testimony of the chemist.

(1) The contention concerning the testimony of Jones is that his handwritten notes were not available to the defense. According to Jones, his notes were delivered to a typist for preparation of typed reports. Defense cross-examination of Jones brought out that the handwritten notes existed. The trial court directed that the notes be brought to court, which was done. The defense inspected and questioned Jones concerning the handwritten notes and brought out a minor discrepancy as to the time of one surveillance. Defendant never sought sanctions for the failure to produce the handwritten notes in advance of trial.

■ Defendant moved to strike all of Jones' testimony "[f]or the reason that he testified that he had a report that he made September 10th [1980]" and the defense had not received a copy of this report. Defendant examined Jones' handwritten notes for September 10th; the only evidence was that there was no typed report for September 10th. The trial court did not err in refusing to strike Jones' testimony on the basis of the failure to deliver a nonexistent typed report. *State v. Bustamante*, 91 N.M. 772, 581 P.2d 460 (Ct.App.1978).

■ (2) Defendant asked that the chemist not be permitted to testify "on the basis that under the rule we were to be provided with all scientific reports of any respect" and the defense was not furnished reports of the analysis of the substance providing the basis for the two charges. The trial court conducted an evidentiary hearing. Testimony at this hearing revealed that Harden, defendant's prior attorney, had obtained, on January 21, 1981, copies of the chemist's letter of October 24, 1980, which stated that "[l]aboratory examinations showed the presence of cocaine." The hearing testimony also revealed that the defense was not furnished copies of the chemist's worksheet or the specific results from the laboratory tests.

The trial court permitted the chemist to testify; the chemist had his work papers with him, and defendant examined the worksheet and papers showing the test results. Defendant does not suggest there is any error in the chemist's conclusion that the substance analyzed showed the presence of cocaine. His contention is that if the worksheet and test results had been furnished in advance of trial, he could have had another chemist check the tests for accuracy.

Assuming, but not deciding, that the worksheet and test results were included in defendant's discovery request and further assuming, but not deciding, that the prosecutor had a duty to produce these papers, not in his possession, under R.Crim.Proc. 27(a)(4), the trial court had discretion, under

R.Crim.Proc. 30, in imposing sanctions for violation of discovery requirements. The trial court did not abuse its discretion in permitting the chemist to testify as to the tests he ran and the test results. Defendant knew, on January 21, 1981, that laboratory examinations showed cocaine, and that he did not have the worksheet or the test results. Defendant did not seek to obtain these missing papers or seek sanctions for their nondisclosure in advance of trial. The only sanction sought, at trial, was to not permit the chemist to testify. See *State v. Williams*, 91 N.M. 795, 581 P.2d 1290 (Ct.App.1978); *State v. Smith*, 88 N.M. 541, 543 P.2d 834 (Ct.App.1975); *State v. Carrillo*, 88 N.M. 236, 539 P.2d 626 (Ct. App.1975).

(g) During the argument on the motions, immediately prior to the taking of testimony, defendant asserted the indictment was "insufficient to advise the defendant of the precise nature of the charge against him." After the prosecution rested its case-in-chief, defendant asked the trial court to require the prosecution to elect whether it was proceeding against defendant as a principal or an aider and abettor. The motion to require an election was denied.

Defendant's contention is that the prosecution was required to prosecute under a specific theory; that defendant was either a principal or an aider and abettor. Defendant asserts that, absent an election as to a specific theory, he was unable to "properly defend" against the charges in the indictment.

Both counts of the indictment, against both defendant and Lindley, charged that defendants "did intentionally distribute, possess with intent to distribute, or aided and abetted one another in the distribution of a controlled substance * * *." Each count charged one crime committed in three ways. The indictment gave defendant notice that he must defend against each of these alternatives. Two of the alternatives were submitted to the jury—distribution or aiding and abetting in the distribution—in accordance with U.J.I.Crim. 36.10 and 28.30.

There was no error in either the charges or the submission of the alternatives to the jury. *State v. Ortiz*, 90 N.M. 319, 563 P.2d 113 (Ct.App.1977); *State v. Gurule*, 90 N.M. 87, 559 P.2d 1214 (Ct.App.1977). Compare *State v. Wall*, 94 N.M. 169, 608 P.2d 145 (1980).

(h) Refused instructions.

(1) Defendant's requested instructions 1 and 2, concerning the testimony of an accomplice, were properly refused. The Use Note to U.J.I.Crim. 40.14 provides that no instruction is to be given on this subject.

(2) Defendant's requested instruction 7 went to "association" with one who actually commits the crime. Defendant's requested instructions 9 and 10 went to presence and mental approbation of an accessory. The trial court properly refused these requests. The Use Note to U.J.I. Crim. 28.39 provides that no instruction is to be given on this subject.

(3) Defendant's requested instruction 8, a modification of U.J.I.Crim. 40.28, would have told the jury that evidence of "other acts or wrongdoings" could be considered only "in determining whether or not the defendant possessed the required specific intent to do the acts charged in the indictment." This instruction was properly refused because it was an incorrect statement of the law. *State v. Marquez*, 96 N.M. 746, 634 P.2d 1298 (Ct.App.1981). The requested instruction failed to recognize that trafficking by distribution is not a specific intent crime. *State v. Bender*, 91 N.M. 670, 579 P.2d 796 (1978). Furthermore, evidence of other acts and wrongdoing was admitted to show defendant's knowledge, and an absence of mistake or accident. The requested instruction would have improperly limited this evidence to "intent".

(4) According to defendant, his requested instructions 11, 12 and 14 "would have required the jury to find that Turner had actual, constructive, or attempted possession of the cocaine; that there was a transfer of the cocaine; and that the person

to whom the cocaine was delivered took control over the cocaine." Accepting, but not deciding, that defendant's characterization of these requested instructions is correct, they were properly refused. Defendant's characterization of these requested instructions was covered by the approved instruction which was given—U.J.I.Crim. 36.-10. See Committee Commentary to U.J.I. Crim. 36.02 and 36.10; see also *State v. Bender*, supra.

█ (5) Defendant's requested instruction 16, concerning character evidence, was properly refused. The Use Note to U.J.I. Crim. 40.26 provides that no instruction is to be given on this subject.

(i) There is no basis for defendant's claim of cumulative error. *State v. Hamilton*, 89 N.M. 746, 557 P.2d 1095 (1976).

*Compelled Disclosure of Statement Taken by an Attorney*

Orosco testified, on direct examination as a prosecution witness, that he told officer Boarman that he (Orosco) had observed defendant bring marijuana and cocaine to Lindley four or five times.

On cross-examination Orosco admitted that he had been interviewed by Harden (defendant's first lawyer), and told Harden that he had never seen defendant distribute marijuana or cocaine. Further cross-examination elicited that Orosco's testimony that defendant supplied marijuana to Lindley was an assumption based on the fact that after defendant appeared, and after defendant and Lindley would go to a separate room, Lindley would have marijuana in his possession. Orosco was asked if he had told Harden, and officer Boarman, about this assumption.

On redirect, the following occurred:

MR. WILLIAMS [prosecutor]: I understand, your Honor, that apparently counsel for the defense has some type of statement that ... [he] eluded [sic] to. We don't have a copy. We would ask that it be produced.

THE COURT: Do you have a statement?

MR. MARCHIONDO: The work produce [sic] of Mr. Harden, if the Court please, and we ask that we have a hearing on this in chambers.

THE COURT: The Court will deny your motion for hearing. The Court orders you to give that statement to the State.

MR. MARCHIONDO: May we approach the bench?

THE COURT: After you have handed that to the State, you may approach the bench and make a record.

MR. MARCHIONDO: I would like to make the record before.

THE COURT: The Court orders you to hand that to the State.

MR. MARCHIONDO: May I make a record before?

THE COURT: You make it from where you are standing, if you wish.

MR. MARCHIONDO: I would like to object to the Court's ruling on the basis that this is not a signed statement. That this is matters related to Mr. Harden in interview with the witness and work produce [sic] of Mr. Harden, and it is not available to the State under any type of ruling or rule in existence in this State.

THE COURT: It will be made available by the ruling of this Court.

Harden's typewritten notes of his interview with Orosco were marked for identification. Out of the presence of the jury, defendant argued against any use by the prosecutor of this "statement". The trial court permitted use of the statement.

Before the jury, Orosco testified on redirect that Orosco had seen defendant in possession of cocaine; that, once, Orosco had asked defendant for cocaine and was given a white powder which Orosco inhaled. This incident is contained in Harden's notes; there is nothing indicating the prosecutor learned of the incident other than from the notes. The prosecutor used the notes to correct the impression, left by the cross-examination, that Orosco had never seen defendant distribute cocaine.

Defendant does not contend that this impression could not be corrected; defendant does not contend that the correction could not be by use of a verbatim statement of a witness. *State v. Bazan*, 90 N.M. 209, 561 P.2d 482 (Ct.App.1977). Compare *State v. Manus*, 93 N.M. 95, 597 P.2d 280 (1979); *State v. Trujillo*, 93 N.M. 728, 605 P.2d 236 (Ct.App.1979), aff'd, 93 N.M. 724, 605 P.2d 232 (1980).

Evidence Rule 613(a) states:

(a) *Examining witness concerning prior statement.* In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown or its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel.

Defendant contends that disclosure of Orosco's oral statement was not authorized by Evidence Rule 613(a) because the typewritten notes were Harden's work product at a time Harden was defendant's counsel.

We agree that Harden's notes were Harden's work product which detailed the substance of a conversation between counsel and a potential witness. *State v. Steinkraus*, 76 N.M. 617, 417 P.2d 431 (1966), states: "In theory, at least, the work-product doctrine only bars discovery before trial." See R.Crim.Proc. 28(c).

Here the notes were ordered produced at trial, and only after defendant had used the notes in cross-examining Orosco. In *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), defense counsel sought to call his investigator as a witness to testify as to his interview with two prosecution witnesses for the purpose of showing that statements made by the witnesses to the investigator differed from the trial testimony of the witnesses. The trial court ruled that the investigator's report of the interviews would have to be made available to the prosecution or the investigator would not be permitted to testify. *Nobles*, supra, held:

Respondent, by electing to present the investigator as a witness, waived the [work-product] privilege with respect to

matters covered in his testimony. Respondent can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination.

Footnote 14, in *Nobles*, supra, states:

What constitutes a waiver with respect to work-product materials depends, of course, upon the circumstances. Counsel necessarily makes use throughout trial of the notes, documents, and other internal materials prepared to present adequately his client's case, and often relies on them in examining witnesses. When so used, there normally is no waiver. But where, as here, counsel attempts to make a testimonial use of these materials the normal rules of evidence come into play with respect to cross-examination and production of documents.

Footnote 15, in *Nobles*, supra, states that disclosure of the investigator's report did not interfere with defendant's right to effective assistance of counsel because "the disclosure order resulted from respondent's voluntary election to make testimonial use of his investigator's report."

Having used attorney's notes concerning Orosco's statements in an effort to impeach Orosco, those notes were no longer shielded by the work-product doctrine. In this circumstance, the trial court properly required disclosure of the notes under Evidence Rule 613(a).

Defendant also contends that ordering the disclosure in the presence of the jury was error. He argues:

It was thus made to appear in front of the jury that defense counsel was trying to hide material, relevant evidence, and that the State was entitled to this important evidence which was being suppressed. The impression conveyed to the jury was that counsel for Mr. Turner was acting improperly and that the prosecutor

required the assistance of the Court. The prosecuror [sic] received the "assistance" of the Court in front of the jury. The actions of Judge Nieves clearly showed a bias and prejudice in favor of the State while critical testimony was being impeached. Such conduct was clearly prejudicial to Turner[.]

■ This argument is an overstatement. The colloquy between court and counsel is quoted above. The colloquy shows that defense counsel was refusing to obey the trial court's disclosure order until he "made his record". Any prejudice to defendant resulting from the colloquy was caused by counsel, not by the trial court.

The judgment and sentences are affirmed.

IT IS SO ORDERED.

HENDLEY, J., concurs.

WALTERS, C. J., specially concurs.

WALTERS, Chief Judge (specially concurring).

I specially concur only to disagree with the language of the majority's penultimate paragraph. I do not read the record to show refusal of counsel "to obey" but, rather, to show a lawyer's concern for "making his record" toward the goal of calling error "to the attention of the trial court so that the trial court might have corrected or avoided the claimed error." *Scott v. Brown*, 76 N.M. 501, 416 P.2d 516 (1966); *Mitchell v. Allison*, 54 N.M. 56, 213 P.2d 231 (1949).