This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **NO. 32,906**

**JAIME SALAZAR,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen K. Quinn, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Elizabeth Ashton, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Allison H. Jaramillo, Assistant Public Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Judge.**

{1} Defendant appeals his conviction by jury for trafficking controlled substances, in violation of NMSA 1978, Section 30-31-20 (2006), on four bases: (1) the district court erred in excluding from evidence the judgments and sentences imposed on two men whose prosecutions arose from the same drug transaction; (2) the district court erred by permitting the prosecutor to question Defendant regarding his other pending drug charges; (3) the district court erred in refusing to allow Defendant to inquire into the identity of a confidential informant (CI), and Defendant's trial attorney was ineffective in seeking that information; and (4) the cumulative effect of the trial errors requires reversal and remand for a new trial. We affirm.

**FACTUAL BACKGROUND**

{2} On February 16, 2011, Curry County Police Officer/Region Five Drug Task Force Narcotic Agent, Phil Caroland (Agent Caroland) received information from a CI that a man named "Ivan," who drove a white truck, would deliver a large quantity of cocaine to buyers in the parking lot of the King's Inn Motor Hotel in Clovis, New Mexico that evening. The drug task force consisting of eight to ten agents, including Agent Caroland, staked out the parking lot from various concealed positions. At about 8:25 p.m., the task force observed two men arrive at the King's Inn in a Chevrolet Malibu. Ten to twenty minutes later, Defendant arrived in a white pickup. The two men walked to the pickup and got inside. Both were observed not to be carrying

2

objects when they entered the truck. The task force approached the truck, performed a felony stop, ordered the three men out, and detained them. When Agent Caroland shone his flashlight into Defendant's truck's cabin, he observed three large bags resting on the center console that contained a substance that appeared to be cocaine.

{3}    Once detained, Defendant asked to speak with Agent Caroland privately. Agent Caroland read Defendant a form *Miranda* warning, which Defendant acknowledged he understood. Defendant proceeded to make a series of inculpatory statements. Defendant said that there was about a quarter kilogram of cocaine in his truck, that he could arrange a purchase of another quantity of cocaine, that he had been instructed to sell the cocaine in his truck for $7,000, and that he "could do a way bigger deal than this, not for coke, for meth[amphetamine]." Referring to the drugs found in his truck, Defendant said "that shit right there, you find right there, it's nothing," and that the two other men who had entered the truck "aren't shit, I just brought them along . . . they ain't got nothing to do with it."

{4}    Agent Caroland obtained a search warrant for Defendant's truck. In it, the agents found two plastic bags of methamphetamine, seven plastic bags of cocaine, three mobile phones, two pistols, a digital scale with white residue on it, approximately $53,000 in U.S. currency, and a ledger. The agents found no drugs on

3

the persons of the two men who had entered Defendant's truck just before the bust or in their separate vehicle.

{5}     The State's theory at trial was that the two men who had been arrested with Defendant were mere brokers or middlemen and that Defendant was the supplier. Defendant disputed this characterization of his role, contending that the two other men had brought the drugs, weapons, and other contraband into his truck and dumped it when the police approached. Defendant testified that he went to the King's Inn at the other men's request and under duress, believing that his family's safety was in "jeopardy" if he did not help the two men. In short, Defendant claimed that he was an innocent man, who had been caught in the "wrong place at the wrong time."

**DISCUSSION**

{6}     Defendant challenges three of the district court's evidentiary rulings. First, Defendant challenges the district court's exclusion on relevance grounds of the judgments and sentences imposed on the two men the government argued were mere middlemen but who Defendant alleged to be the true sources of the contraband discovered in his truck. Second, Defendant challenges the district court's decision to allow the State to impeach Defendant's claims of innocence by asking Defendant about unrelated drug trafficking charges that arose after his arrest in this case. Third, Defendant challenges the district court's refusal to allow Defendant's attorney to ask

4

Agent Caroland to disclose the identity of the CI during trial. Lastly, Defendant argues that the district court's errors, taken together, amount to cumulative error requiring reversal.

**Standard of Review**

{7}    "With respect to the admission or exclusion of evidence, [the appellate courts] generally apply an abuse of discretion standard where the application of an evidentiary rule involves an exercise of discretion or judgment, but . . . apply a de novo standard to review any interpretations of law underlying the evidentiary ruling." *DeWitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 13, 146 N.M. 453, 212 P.3d 341. When a district court erroneously admits or refuses to admit evidence, we then "analyze whether [the] evidentiary error was merely harmless, in which case [the appellate courts] could overlook it, or prejudicial, requiring reversal." *State v. Leyba*, 2012-NMSC-037, ¶ 23, 289 P.3d 1215. In order to determine whether a district court's erroneous application of the Rules of Evidence is harmless, we "apply the non-constitutional error standard for harmless error." *Id.* ¶ 24. This standard requires us to "examine the error itself, including the source of the error and the emphasis placed on the [erroneously admitted evidence] at trial." *Id.* We also "look at the other, non-objectionable evidence of guilt, not for a sufficiency-of-the-evidence analysis, but to evaluate what role the error played at trial." *Id.* If this analysis reveals a "reasonable

probability" that the district court's erroneous admission or exclusion of evidence "contributed to the defendant's conviction[,]" then reversal is warranted. *Id.* (alteration, internal quotation marks, and citation omitted).

**The District Court Did Not Commit Reversible Error in Excluding the Judgment and Sentence of the Two Men Arrested With Defendant**

{8} Defendant argues that the district court's exclusion of the judgment and sentences of the two men found with Defendant in his vehicle at the time of his arrest prevented him from rebutting the State's contention that Defendant was a "very busy, high-level drug trafficker." Put differently, Defendant argues that the judgment and sentences were relevant because they would have refuted the State's argument that the two men arrested along with Defendant were middlemen.

{9} As an initial matter, we note that the judgments against the other men are not part of the record on appeal. "It is [the d]efendant's obligation to provide this Court with a sufficient record proper." *State v. Druktenis*, 2004-NMCA-032, ¶ 44, 135 N.M. 223, 86 P.3d 1050. When the defendant fails to create a sufficient record to evaluate the propriety of the district court's holding, "every presumption must be indulged by the reviewing court in favor of the correctness and regularity of the [district] court's judgment." *State v. Rojo*, 1999-NMSC-001 ¶ 53, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

6

{10}    Suffice it to say, the absence of the judgments themselves from the record lend unnecessary difficulty to our evaluation of Defendant's argument. That is because Defendant argues that the judgments were relevant to "rebut" the State's claim that the two men who entered Defendant's car were "middlemen in the deal, [while Defendant] was 'the supplier.' " Although it is conceivable that the judgments of conviction against the two men contained statements that tended to contradict the State's theory of prosecution (for example, if the judgments were for the same crime that Defendant was eventually found guilty of committing), it is also conceivable that the judgments support the State's theory that the two men were minor players or that the judgments were not probative of either theory. Given the inadequacy of the record on appeal, the district court's determination that the judgments were irrelevant is presumptively correct. Defendant's conclusory assertion that the judgments would "rebut" the State's case against Defendant is not enough to overcome this presumption.

{11}    Second, even if the district court abused its discretion in excluding the judgments, the error is harmless in this case. The key evidence that tended to prove that Defendant was a "supplier" was Defendant's sweepingly inculpatory post-arrest statements, which were admitted at trial, and Agent Caroland's testimony that the two other men were not observed to be carrying anything when they entered Defendant's

truck. Nor were narcotics found in the two men's Malibu or on their person. In any event, Defendant's attorney asked Agent Caroland whether the two other men in the vehicle with Defendant were charged with crimes for their part in the putative drug transaction, and Agent Caroland told the jury that they were. Although the district court excluded the judgments themselves on relevance grounds, the best we can tell from the record before us is that the judgments were largely cumulative of other evidence actually admitted at trial. *See* Rule 11-403 NMRA (stating that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence"); *see also State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828 (holding that the appellate court "will affirm the [district] court's decision if it [is] right for any reason[,] so long as it is not unfair to the appellant"). We conclude that Defendant has failed to establish that the district court abused its discretion in disallowing the admission of the judgments and sentences at issue and that even had the district court erred, the error was harmless under the facts of this case.

**The District Court Did Not Abuse Its Discretion in Allowing the State to Impeach Defendant With Questions About a Pending, Unrelated Drug Trafficking Charge**

{12}     During his direct testimony, Defendant stated that he went to the King's Inn at the other men's request and under duress, believing that his family's safety was in "jeopardy" if he did not help the two men. Defendant claimed that he was an innocent

8

man who had been caught in the "wrong place at the wrong time." The district court allowed the State to impeach Defendant's claims of innocence by asking Defendant about unrelated drug trafficking charges that arose after his arrest in this case. Defendant argues that the district court abused its discretion in permitting the State to inquire into Defendant's pending charges.

{13} Rule 11-404(B)(1) NMRA provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, Rule 11-404(B)(2) permits the introduction of such evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." "Rule 11-404(B) is a specialized rule of relevancy that, like its federal counterpart, limits the admissibility of evidence that, although relevant, is unfairly prejudicial to the accused." *State v. Ruiz*, 2001-NMCA-097, ¶ 13, 131 N.M. 241, 34 P.3d 630. "The risk is that character evidence when used circumstantially is likely to be given more probative value than it deserves and may lead the fact-finder to punish a bad person regardless of the evidence of what happened in the specific case." *Id.* (internal quotation marks and citation omitted).

{14} In order to admit evidence for a purpose other than proving Defendant's propensity to act in accordance with a character trait, the prosecution must "cogently

inform the court of the rationale for admitting the evidence to prove something other than propensity." *State v. Flores*, 2010-NMSC-002, ¶ 31, 147 N.M. 542, 226 P.3d 641 (omission, internal quotation marks, and citation omitted). If a non-propensity rationale for introduction of the evidence exists, then the district court must determine "if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury." *Ruiz*, 2001-NMCA-097, ¶ 15 (alteration, internal quotation marks, and citation omitted).

{15}     On cross-examination, Defendant acknowledged that he owned one of the pistols found in his truck. But Defendant denied ever having possessed the other pistol, cocaine, methamphetamine, cash, log, and the scale found in his truck. The State sought to introduce evidence that Defendant had been arrested and charged for possession of methamphetamine in August 2011, about six months after his arrest in this case. At a bench conference, the prosecutor explained that evidence of Defendant's later narcotic arrest showed "absence of mistake" related to his arrest in this case. Defendant argued that the pending charge was inadmissible propensity evidence under Rule 11-404(B) and in any event its prejudicial effect and potential for confusing the issues substantially outweighed its probative value. *See* Rule 11-403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice [or] confusing the issues[.]"). The

10

district court allowed the prosecutor to inquire into the pending charge for the purpose of proving absence of mistake and motive. The prosecutor then asked Defendant about the pending charge and the events that led to it, focusing on the fact that Defendant had been arrested while driving the same white truck and had similarly claimed that the drugs were someone else's after his arrest.

{16} We begin our analysis with the elements of the two substantive trafficking charges submitted to the jury. The district court instructed the jury that "[f]or you to find [D]efendant guilty of [trafficking], as charged in Count 1 [of the information], the State must prove to your satisfaction beyond a reasonable doubt[:] "1. [that D]efendant had cocaine in his possession; 2. [that D]efendant knew it was cocaine; 3. [that D]efendant intended to transfer it to another; [and 4. t]his happened in New Mexico on or about the 16th day of February, 2011." *See also* UJI 14-3111 NMRA (trafficking jury instruction). The jury instruction for Count 2, of which Defendant was acquitted, was the same in all respects except that it charged Defendant with trafficking methamphetamine.

{17} Since the State had the burden of proving that Defendant knowingly possessed cocaine and methamphetamine with the intent to transfer it to another, evidence that Defendant intended to traffic methamphetamine or cocaine was admissible in order to obtain a conviction on either of the two substantive counts. In other words,

evidence that Defendant subsequently possessed methamphetamine in his truck was admissible to prove intent (and not merely propensity) because "it tends to show that [the defendant] was not some hapless fool mistakenly caught up in an overzealous law enforcement action." *United States v. Hernandez*, 84 F.3d 931, 935 (7th Cir. 1996) (internal quotation marks and citation omitted). *See State v. Turner*, 1981-NMCA-144, ¶ 8, 97 N.M. 575, 642 P.2d 178 (upholding admission of evidence that the defendant possessed controlled substances on uncharged occasions as "tend[ing] to negate the defense claim that [the] defendant had nothing to do with the cocaine transactions and the claim that [the] defendant's presence was only a coincidence."). This is particularly so given the defense Defendant chose to employ at trial.

{18}     Defendant argues that even if the evidence of his subsequent possession of methamphetamine was admissible to prove intent, the district court abused its discretion in admitting the evidence because its prejudicial effect substantially outweighed its probative value. Plainly, the evidence may have been prejudicial. But Defendant's testimony that the presence of drugs in his truck was an accident likewise made evidence of his later arrest under similar circumstances highly probative. Given the foregoing, we do not think the district court abused its discretion in determining that the probative value of Defendant's subsequent arrest for drug trafficking outweighed its potential for unfair prejudice. *See Rojo*, 1999-NMSC-001, ¶ 48

12

("Determining whether the prejudicial impact of evidence outweighs its probative value is left to the discretion of the trial court. In determining whether the trial court has abused its discretion in applying Rule 11-403, the appellate court considers the probative value of the evidence, but the fact that some jurors might find this evidence offensive or inflammatory does not necessarily require its exclusion[.]" (alteration, internal quotation marks, and citations omitted)).

**The District Court Did Not Abuse Its Discretion in Denying Defendant's Request to Ask Agent Caroland to Disclose the Identity of the CI**

{19}     Defendant challenges the district court's refusal to allow Defendant's attorney to ask Agent Caroland to disclose the identity of the CI during trial. Defendant also raises a related issue for the first time on appeal, arguing that his attorney's failure to move for an in camera review prior to trial of the CI's relevance to Defendant's defense amounted to constitutionally ineffective assistance of counsel. We reject both arguments.

**A.     The District Court Did Not Abuse Its Discretion in Refusing to Order Disclosure of the CI's Identity**

{20}     Rule 11-510(B) NMRA provides that "[t]he United States, a state, or a subdivision thereof has a privilege to refuse to disclose the identity of an informer."[1]

---

[1]Rule 11-510(A) defines "informer" as "a person who has provided information concerning a possible violation of the law to (1) a law enforcement officer; (2) a legislative committee member or staffer; or (3) an individual who has assisted with an investigation into a violation of the law."

13

Rule 11-510(D)(3)(a)(i), (ii) sets out various "[e]xceptions" to the State's right to assert the privilege. One exception applies when "the evidence suggests that the informer can provide testimony that is (i) relevant and helpful to a criminal defendant [or] (ii) necessary for a fair determination of the guilt or innocence of a criminal defendant[.]" *Id.* The process for determining whether the exception applies is as follows. First, the defendant files a motion "for an in camera determination of whether the disclosure of an informer's identity or ability to testify should be ordered"—i.e., the defendant must argue that the informer's identity or testimony is either relevant and helpful to the defendant or necessary for a fair determination of the defendant's guilt or innocence. Rule 11-510(D)(3)(a). The district court then provides the government with "an opportunity to present evidence for an in camera review addressing whether the informant can, in fact, supply such testimony." Rule 11-510(D)(3)(a). The rule contemplates the government defending against the motion by presenting affidavit evidence; but when "the issue cannot be resolved through affidavits, the court may order testimony from the informer or other relevant persons." Rule 11-510(D)(3)(b). On appeal, we review the district court's denial of a motion to disclose the identity of a CI for an abuse of discretion. *Rojo*, 1999-NMSC-001, ¶ 39.

**{21}** At trial, Defendant's attorney asked Agent Caroland to reveal the identity of the CI who had provided him with information that ultimately led to Defendant's arrest.

14

The State objected and asked for a bench conference. At the bench conference, the prosecutor asserted the State's privilege not to disclose the identity of the CI, arguing that disclosure of the CI's identity was not merited because Agent Caroland had been coached not to reveal any of the statements made to him by the CI. Defendant argued that Agent Caroland had in fact related statements by the CI, thus making the CI a "necessary witness," and therefore disclosure of the CI's identity was warranted. The district court declined to order disclosure of the CI's identity.

{22}    Defendant contends that "[b]ecause the [CI] was the one who actually set up the drug deal, it was critical to ask him who[m] he set it up with." Defendant contends also that the CI's testimony would have supported Defendant's claim that the other two men involved in the drug transaction were in fact the source of the drugs and contraband found in Defendant's truck.

{23}    It was within the district court's discretion to deny Defendant's request because it was not made in the form of a pretrial motion for in camera review, as Rule 11-510 requires. The district court was ill-equipped to evaluate the relevance, helpfulness, and necessity of the CI's identity or testimony to Defendant's defense in the middle of trial, so it acted in its discretion in denying Defendant's request that Agent Caroland be required to then disclose the identity of the CI. *See State v. Martinez*, 1982-NMCA-005, ¶ 11, 97 N.M. 316, 639 P.2d 603 ("To invoke an in camera hearing under [Rule

15

11-510], [the] defendant is not required to specifically move for such a hearing; however, [the] defendant is required to fairly invoke a ruling by the trial court as to whether such a hearing should be held. *The trial court is not to be held in error for failure to hold a hearing that [the] defendant never sought.*" (emphasis added)). We conclude that the district court did not err in not requiring the State to disclose the identity of the CI during trial.

**B.      Defendant Has Failed to Show His Trial Counsel Was Ineffective by Failing to Make a Pretrial Motion for Disclosure of the CI's Identity.**

**{24}** "Criminal defendants are entitled to reasonably effective assistance of counsel under the Sixth Amendment of the United States Constitution." *State v. Crocco*, 2014-NMSC-016, ¶ 12, 327 P.3d 1068 (internal quotation marks and citation omitted). In order to prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that his attorney erred, and (2) that this error prejudiced the defendant in order to prevail on a claim of ineffective assistance of counsel. *State v. Arrendondo*, 2012-NMSC-013, ¶ 38, 278 P.3d 517. "[T]here is a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Garcia*, 2011-NMSC-003, ¶ 33, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citation omitted).

**{25}** The "prejudice" element of an ineffective assistance of counsel claim is satisfied when the defendant shows a "reasonable probability" that but for the

16

attorney's objectively unreasonable conduct, the result of the proceedings would have been different. *State v. Brazeal*, 1990-NMCA-010, ¶ 23, 109 N.M. 752, 790 P.2d 1033; *see also Strickland v. Washington*, 466 U.S. 668, 694 (1984) ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

{26} "When an ineffective assistance claim is first raised on direct appeal, [the appellate courts] evaluate the facts that are part of the record." *Crocco*, 2014-NMSC-016, ¶ 14 (internal quotation marks and citation omitted). "If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *Id.* (internal quotation marks and citation omitted).

{27} Defendant asserts that the CI's testimony would have corroborated Defendant's testimony that the two other men were the true source of the drugs and other contraband found in Defendant's truck. Defendant argues that his attorney's argument to the district court that the CI was a "necessary witness" and Defendant's testimony at trial that the two other men were the true sources of the contraband found in Defendant's truck show that no reasonable attorney would have failed to move for

17

disclosure of the CI's identity before trial, as Rule 11-510 requires. Defendant contends that he was prejudiced by this error because the jury did not hear a "critical aspect" of his defense.

**{28}** We start with Defendant's argument that his attorney was objectively unreasonable in failing to lodge a pretrial motion for disclosure of the CI's identity. When the prosecutor asked Agent Caroland whether he knew the identity of the person who was bringing the drugs to the King's Inn, Defendant's attorney made a successful hearsay objection before Agent Caroland could answer. While raising the issue of the CI's identity might create grounds for uncertainty with the jury, refraining from actually seeking to introduce the CI's testimony into evidence can be explained as a rational trial strategy because for all Defendant's attorney knew (and the same can be said for us on appeal), the CI told Agent Caroland that Defendant was the source of the drugs. A reasonable attorney could very well have concluded that the CI's testimony would have been consistent with his statements to Agent Caroland, thus bolstering the State's case. Since we presume Defendant's attorney was acting reasonably, *see Strickland*, 466 U.S. at 689, we can only conclude on this record that the CI would have identified Defendant as the source of the drugs and that it was not unreasonable to not seek to have the CI testify as a witness.

{29} But even if a reasonable attorney would have sought disclosure of the CI's identity, we cannot say that the absence of the CI's testimony undermines our confidence in the outcome of the case. In other words, Defendant fails to show that he was prejudiced by his attorney's failure to obtain the CI's testimony. *See State v. Roybal*, 2002-NMSC-027, ¶ 25, 132 N.M. 657, 54 P.3d 61 ("[E]ven if counsel's performance is deficient, [the d]efendant is not entitled to a new trial unless, considering the totality of the evidence, a reviewing court determines that there is a reasonable probability that, absent the errors, the fact[-]finder would have had a reasonable doubt respecting guilt." (internal quotation marks and citation omitted)). It is also not at all clear that knowledge of the CI's identity would have been helpful, since Defendant's attorney made hearsay objections to Agent Caroland relating to the CI's statements as to who was the source of the drugs. *See State v. Campos*, 1991-NMCA-119, ¶ 10, 113 N.M. 421, 827 P.2d 136 (recognizing that "the informant did not possess information relevant to the preparation or presentation of [the defendant's] defense, or which would exculpate [the] defendant from the charge against him") *rev'd on other grounds, Campos v. State*, 1994-NMSC-012, 117 N.M. 155, 870 P.2d 117.

{30} Nor has Defendant shown that the CI's testimony was necessary for a fair determination of his guilt, as Rule 11-510(D)(3)(a)(ii) requires. This showing overlaps

19

with the broader *Strickland* prejudice inquiry, which requires "consider[ation of] the totality of the evidence before the judge or jury" in order to determine the effect of an error on the jury's determination of guilt. *Strickland*, 466 U.S. at 695; *see also Roybal*, 2002-NMSC-027, ¶ 25. The evidence of Defendant's guilt in this case was overwhelming. First, Agent Caroland testified that the two men did not appear to be carrying anything when they entered Defendant's truck. This testimony, combined with the sheer quantity of contraband found in Defendant's truck—two plastic bags of methamphetamine, seven plastic bags of cocaine, three mobile phones, two pistols, a digital scale with white residue on it, approximately $53,000 in U.S. currency, and a ledger—strongly supports the inference that Defendant was the source of the drugs, not the other two men. Thus, Defendant has failed to show either that the district court would have granted his request for disclosure of the CI's identity as necessary for determining his guilt or innocence under Rule 11-510 or that the CI's testimony was a "critical aspect" of the jury's evaluation of the evidence such that it is likely the jury would have acquitted Defendant after hearing the CI's testimony.

**{31}** This conclusion is bolstered by the strongest evidence against Defendant: the inculpatory post-arrest statements he chose to make to agents. Defendant told agents that there was about a quarter kilogram of cocaine in his truck, that he could arrange a purchase of another quantity of narcotics, that he had been told to get $7,000 in

exchange for the cocaine in his truck, and that he "could do a way bigger deal than this, not for coke, for meth[amphetamine]." Referring to the drugs found in his truck, Defendant said "that shit right there, you find right there, it's nothing" and that the two other men who had entered the truck "aren't shit, I just brought them along . . . they ain't got nothing to do with it." Given these statements, we cannot conclude that there is a reasonable probability that the outcome of the trial would have been different if the CI had testified, even if we presume that the CI's testimony would support, rather than refute, Defendant's claims that the other two men were the source of the drugs.

{32} Given the strong circumstantial evidence of Defendant's guilt and Defendant's own inculpatory post-arrest statements, we cannot say that Defendant's counsel's failure to make a pretrial motion for disclosure of the identity of the CI, even if in error, undermines our confidence in the outcome of Defendant's trial. Accordingly, Defendant's claim for ineffective assistance of counsel fails because the record does not support a finding of prejudice. *See Roybal*, 2002-NMSC-027, ¶ 25.

**Because Defendant Has Not Established That the District Court Erred, Defendant Has Failed to Show Cumulative Error**

{33} "The doctrine of cumulative error applies when multiple errors, which by themselves do not constitute reversible error, are so serious in the aggregate that they cumulatively deprive the defendant of a fair trial." *Id.* ¶ 33. "Where there is no error

21

to accumulate, there can be no cumulative error." *State v. Samora*, 2013-NMSC-038, ¶ 28, 307 P.3d 328 (alteration, internal quotation marks, and citation omitted). Since Defendant has failed to demonstrate error in any of the district court's rulings he takes issue with on appeal, there is no basis for reversing on cumulative error grounds.

**CONCLUSION**

{34}    Defendant's conviction is affirmed.

{35}    **IT IS SO ORDERED.**


_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**


_____
**MICHAEL E. VIGIL, Chief Judge**


_____
**JONATHAN B. SUTIN, Judge**