694 P.2d 922

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**IBN OMAR–MUHAMMAD, aka Khayree
Omar-Muhammad, aka Loren Jerome
Fugett, Defendant-Appellant.**

No. 15413.

Supreme Court of New Mexico.

Jan. 23, 1985.

Paul Bardacke, Atty. Gen., Barbara Green, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Janet Clow, Chief Public Defender, Lewis S. Fleishman, Asst. Public Defender, Santa Fe, for defendant-appellant.

## OPINION

RIORDAN, Justice.

Defendant Ibn Omar-Muhammad (defendant) was charged with the first-degree depraved mind murder of Allen Gates Cross (Cross). The case was originally brought in the Children's Court Division in.

the Curry County District Court. After several hearings, the case was transferred to the criminal docket of the district court. After a jury trial, the defendant was convicted and was sentenced to life imprisonment. The defendant appeals. We reverse and remand for a new trial.

The issues on appeal are:

I. Whether the failure to instruct the jury properly on the essential elements of depraved mind murder as set forth in NMSA 1978, UJI Crim. 2.05 (Repl.Pamp.1982), was reversible error.

II. Whether charging the defendant under the general murder statute on a depraved mind murder theory rather than under the specific vehicular homicide statute was error.

III. Whether the failure of the district court to instruct the jury on vehicular homicide as a lesser included offense of depraved mind murder requires reversal.

*Facts.*

On the morning of September 30, 1983, Deputy Sheriff John Mares (Mares) received a call from the State police regarding the theft of a red Mercedes and the possibility of the vehicle coming into Clovis. Mares and Deputy Sheriff Mike Jackson encountered the Mercedes approximately 15 miles north of Clovis on state road 18 traveling south at an average speed. The sheriff's unit made a U-turn to take up pursuit of the Mercedes. Mares turned on his unit's emergency equipment, which included an outside mounted red light beacon and a siren. The Mercedes then accelerated. Mares got the speed of his unit up to approximately 100 miles per hour but could not catch the Mercedes. Mares then radioed for assistance.

Deputy Sheriff Fred Hamner (Hamner) set up a roadblock in an effort to stop the Mercedes. Hamner parked his vehicle, with its emergency equipment turned on, so that the vehicle blocked the northbound lane of state road 18. A truck approached, and Hamner let it proceed. He then saw the Mercedes when it was about a quarter of a mile away. In an effort to stop the Mercedes, Hamner, who was in uniform, stepped into the southbound lane. The driver of the Mercedes made no effort to stop or to go around Hamner. As the Mercedes approached, Hamner saw that the driver had locked his hands at the top of the steering wheel and had lain down on the seat as if to dodge any bullets. Hamner fired one shot at the Mercedes' radiator and got out of its path. He feared that he would be hit by the Mercedes. After the Mercedes had passed, Hamner radioed that the driver of the Mercedes had attempted to run him off the road. In his opinion, the Mercedes had sufficient time and distance to stop before it got to where he stood.

The Mercedes was next encountered by Deputy Sheriff Chet Spear (Spear) on state road 18. Spear drove in the northbound lane of the two-lane road. The Mercedes, traveling in the southbound lane, pulled into the northbound lane in order to pass a truck. The Mercedes passed the truck but remained in the northbound lane, driving straight toward Spear's vehicle. The Mercedes had sufficient time and room to get back into the southbound lane. Realizing that the driver of the Mercedes had no intention of going back into his lane, Spear pulled off onto the shoulder of the road to avoid a collision. The Mercedes continued on. Spear radioed ahead to two policemen, Officers Kevin Clements (Clements) and David Williams (Williams), who had established another roadblock south of his position, and told them of the oncoming Mercedes.

Spear's unit is usually used in undercover work. Therefore, it does not have outside markings on it identifying it as a law enforcement vehicle. However, prior to the near collision with the Mercedes, Spear had turned on the vehicle's siren and emergency grill red lights.

Spear turned his vehicle around and continued his pursuit of the Mercedes. He lost sight of it as it went over a crest in the road. Spear topped the crest and saw from about a mile away the emergency lights of

the two-car roadblock established by Clements and Williams.

Clements had positioned his vehicle in a northeasterly direction in the southbound lane. Part of his vehicle was on the shoulder of the road. Williams had positioned his vehicle in the northbound lane so that the rear of his vehicle partially blocked the lane. Clements positioned himself at the left rear of his vehicle, and Williams positioned himself behind the right front wheel of his. The distance between the two units was 33 feet, 1 inch.

After this roadblock was set up, two to three vehicles approached and were allowed to go through. The Mercedes, now traveling behind another vehicle, approached the roadblock. It passed that vehicle and proceeded toward the roadblock at a speed estimated at 100 miles per hour. The defendant later stated that his speed was 120 miles per hour. The defendant made no attempt to stop.

As the Mercedes approached, Williams saw that the driver had lain down on the seat, leaving one hand on the steering wheel. Williams shot at the Mercedes' radiator and then ran toward a bar ditch to avoid getting hit. The Mercedes went through the roadblock, taking off the rear bumper of Williams' car. The left front tire of the Mercedes blew out, but the defendant made no attempt to stop his vehicle. The Mercedes swerved down the road for a distance of 331 feet, 7 inches and hit a hay truck which had stopped in the northbound lane for the roadblock. After that impact, the defendant straightened the Mercedes and drove another 43 feet, 5 inches into a field where he hit and killed Cross. Cross was visible from the road by another driver who had stopped behind the hay truck at approximately a quarter to a half mile south of the roadblock. Cross was also visible to Officer Clements from his location, at least 331 feet, 7 inches away.

After hitting Cross, the defendant continued to attempt to flee from the police. When the police went into the field, they found the Mercedes stationary and unoccupied. The defendant was captured in the field as he attempted to run away.

After his arrest, the defendant admitted to Spear that he was aiming at him when he ran him off the road. He told Spear that he knew Spear valued his life and would move off the road. The defendant also told Spear that he fled from the officers because he had some marijuana in his vehicle and was afraid of being caught with it. He told Mares that he knew the police were chasing him, but he fled because of the marijuana. The defendant admitted to Mares that he knew the Mercedes had been stolen.

Examination of the road between the two-car roadblock and the hay truck evidenced no braking skids made by the Mercedes. Additionally, it appeared that the Mercedes accelerated as it went across the field.

## I. Failure to Properly Instruct the Jury.

■ The defendant argues on appeal that the essential elements of first-degree depraved mind murder were incorrectly set out in the instruction given to the jury. The State concedes this point.

One of the instructions on depraved mind murder given in this case stated as follows:

The defendant is charged with first-degree murder by an act greatly dangerous to the lives of others indicating a depraved mind without regard for human life. For you to find the defendant guilty as charged in Count I, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant intentionally drove a motor vehicle at a high rate of speed into a police roadblock;

2. The defendant's act caused the death of Allen Gates Cross;

3. The act of the defendant was greatly dangerous to the lives of others, indicating a depraved mind without regard for human life;

4. *The defendant should have known that his act was greatly dangerous to the lives of others;*

5. This happened in New Mexico on or about the 30th day of September, 1983. (Emphasis added.)

This instruction was an incorrect statement of the law because it sets out an objective standard of knowledge of the risk as the requisite knowledge for the crime of first-degree depraved mind murder. The requisite knowledge is a subjective one. The fourth element should have stated, "The defendant knew that his act was greatly dangerous to the lives of others." UJI Crim. 2.05; *State v. McCrary,* 100 N.M. 671, 675 P.2d 120 (1984). Additional instructions given by the trial court defining the term "depraved mind" did not rectify this problem. Thus, the instruction as given "differs materially" from the requisite instruction, and the error was not corrected by subsequent instructions. *Jackson v. State,* 100 N.M. 487, 672 P.2d 660 (1983). The defendant is therefore entitled to a reversal of his murder conviction and a new trial. *Id.*

## II. General/Specific Statute Rule.

As his next point on appeal, the defendant argues that under the general/specific statute rule, he should have been prosecuted for vehicular homicide by reckless conduct and not for depraved mind murder. The general/specific statute rule is as follows:

It is a fundamental rule that where the general statute, if standing alone, would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute, whether it was passed before or after such general enactment. * * *

[T]he State had no alternative in the matter but to prosecute the appellant under the special statute. * * *

*State v. Lujan,* 76 N.M. 111, 117, 412 P.2d 405, 408 (1966) (quoting *State v. Blevins,* 40 N.M. 367, 368, 370, 60 P.2d 208, 209, 210 (1936)). The defendant asserts that under the above rule, he should have been

charged with the more specific crime of vehicular homicide because the same act and culpability are required for the two offenses. We disagree.

The appropriate test for determining whether two offenses are separate is:

[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.

*Blevins,* 40 N.M. at 369, 60 P.2d at 210 (1936) (quoting *Blockburger v. U.S.,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)).

NMSA 1978, Section 66–8–101 (Cum. Supp.1984), describing vehicular homicide reads in pertinent part:

A. Homicide by vehicle is the killing of a human being in the unlawful operation of a motor vehicle.

* * * * * *

C. Any person who commits homicide by vehicle * * * while violating Section 66–8–113 NMSA 1978 is guilty of a third degree felony and shall be sentenced pursuant to the provisions of Section 31–18–15 NMSA 1978 * *

Section 66–8–113 is the reckless driving statute that the defendant claims is applicable to the case at issue. It reads in pertinent part:

A. Any person who drives any vehicle carelessly and heedlessly in willful or wanton disregard of the rights or safety of others and without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property is guilty of reckless driving.

The elements of vehicular homicide by reckless driving are contained in NMSA 1978, UJI Crim. 2.60 (Repl.Pamp.1982) and NMSA 1978, UJI Crim. 2.61 (Repl.Pamp. 1982).

■ The mental state required for vehicular homicide is that of conscious wrongdoing. *State v. Jordan,* 83 N.M. 571, 494 P.2d 984 (Ct.App.1972). Conscious wrongdoing has been defined as the purposeful doing of an act that the law declares to be a crime. *State v. Sheets,* 94 N.M. 356, 366, 610 P.2d 760, 770 (Ct.App.), *cert. denied,* 94 N.M. 675, 615 P.2d 992 (1980).

■ NMSA 1978, Section 30-2-1(A)(3) (Repl.Pamp.1984), defines depraved mind murder as:

[A]ny act greatly dangerous to the lives of others, indicating a depraved mind regardless of human life.

In order for a defendant to be found guilty of first-degree depraved mind murder, the jury must find that the defendant had subjective knowledge that his act was greatly dangerous to the lives of others. UJI Crim. 2.05. A defendant does not have to actually know that his victim will be injured by his act. Rather, it is sufficient if a defendant's conduct is "very risky, and under the circumstances *known to [defendant,* he] should have realized this very high degree of risk." *McCrary,* 100 N.M. at 673, 675 P.2d at 122 (emphasis in original).

■ Thus, the mental state required for vehicular homicide (conscious wrongdoing) requires only that a defendant purposefully engage in an unlawful act. This concept does not require that a defendant know of any risk involved in his actions. However, for a defendant to be convicted of depraved mind murder in the first degree, it must be proven that he had a subjective knowledge of the risk involved in his action. This element of subjective knowledge under depraved mind murder requires proof of an additional fact which is not required under the vehicular homicide statute. Thus, the depraved mind murder statute does not "include the same matter" as the vehicular homicide statute, and therefore the two offenses are distinct from one another. *Lujan,* 76 N.M. at 117, 412 P.2d at 408. The general/specific statute rule is therefore inapplicable in the instant case, and the defendant was properly charged under the depraved mind murder statute.

### III. Lesser Included Offense.

■ As his last point on appeal, the defendant asserts that he was entitled to an instruction on vehicular homicide by reckless conduct as a lesser included offense of depraved mind murder. "In order for a lesser offense to be included within a greater offense, the lesser offense must be necessarily included in the greater offense charged in the indictment. For the offense to be necessarily included, the greater offense cannot be committed without also committing the lesser offense." *State v. DeMary,* 99 N.M. 177, 179, 655 P.2d 1021, 1023 (1982) (citations omitted).

Depraved mind murder requires extremely reckless conduct evidencing indifference for the value of human life. § 30-2-1(A)(3); *see* W. LaFave & A. Scott, Jr., *Handbook on Criminal Law* § 70 (1972). This extreme recklessness is set out under Section 30-2-1(A)(3), as any act greatly dangerous to the lives of others, indicating a depraved mind without regard for human life. However, ordinary recklessness is sufficient for a conviction of vehicular homicide and is shown by a total disregard for the safety of others. § 66-8-113; UJI Crim. 2.61. Therefore, under the test for determining a lesser included offense, one cannot drive extremely recklessly showing total indifference for the value of human life (depraved mind murder) without also driving with a total disregard for the safety of others (vehicular homicide). The difference between the two requirements of recklessness is one of degree, not of kind. Further, depraved mind murder requires a subjective knowledge of the risk to the lives of others. As noted previously, the mental state required for vehicular homicide is that of conscious wrongdoing (*i.e.,* purposefully doing an act that the law declares to be a crime). One cannot subjectively know that the manner in which one is operating a motor vehicle involves a very high degree of risk to the lives of others (depraved mind murder) without also purposefully driving in a manner that the law declares to be a crime (vehicular homicide

by reckless conduct). Thus, the greater offense of depraved mind murder by vehicle cannot be committed without also committing the lesser offense of vehicular homicide. *State v. DeMary.*

However,

> [I]t is only where there is some evidence tending to reduce the offense charged to a lessor [sic] degree or grade, that a refusal to instruct as to included offenses, is error.

*State v. Duran,* 80 N.M. 406, 407, 456 P.2d 880, 881 (Ct.App.1969) (quoting *State v. Sandoval,* 59 N.M. 85, 88, 279 P.2d 850, 851–52 (1955)). To determine whether an instruction on the lesser included offense was properly refused, "we must determine whether the evidence could support the conviction for the [lesser offense]." *State v. Reynolds,* 98 N.M. 527, 529, 650 P.2d 811, 813 (1982).

The evidence here (*i.e.,* the defendant's conduct of eluding law enforcement personnel by knowingly trying to run them off the road and knowingly driving at a high rate of speed through roadblocks) shows the depraved mind required by Section 30–2–1(A)(3). The defendant drove in an extremely reckless manner, showing he had no regard for anyone's life or safety.

Thus, under these facts, we hold that there was insufficient evidence to support a conviction for the lesser offense of vehicular homicide. The trial court properly denied the defendant's requested instruction. The cause is therefore reversed and remanded for a new trial for failure to properly instruct on the elements of depraved mind murder.

IT IS SO ORDERED.

STOWERS and WALTERS, JJ., concur.