737 P.2d 1165

STATE of New Mexico
Plaintiff-Appellee,

v.

Ibn OMAR–MUHAMMAD, aka Khayree
Omar-Muhammad, aka Loren Jerome
Fugett, Defendant-Appellant.

No. 16026.

Supreme Court of New Mexico.

May 13, 1987.

Jacquelyn Robins, Chief Public Defender, Kathryn Hormby, Asst. Appellate Defender Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen., Anthony Tupler, Asst. Atty Gen., Santa Fe, for plaintiff-appellee.

## OPINION

STOWERS, Justice.

Ibn Omar-Muhammad (defendant) appeals from his second conviction of first degree depraved mind murder, pursuant to NMSA 1978, Subsection 30–2–1(A)(3) (Repl. Pamp.1984), for the death of Allen Gates Cross, a bystander killed when defendant drove through a police roadblock at a speed of approximately 100 miles per hour. Initially, defendant was tried by a jury and convicted of depraved mind murder and three counts of aggravated assault on a police officer. He appealed from the murder conviction, for which he was sentenced to life imprisonment, and this Court reversed, holding that the jury had been instructed improperly on the elements of depraved mind murder. *See State v. Omar-Muhammad,* 102 N.M. 274, 694 P.2d 922 (1985) (*Omar-Muhammad I*).

Upon remand for a new trial on the murder count, defendant again was tried by a jury, convicted of first degree depraved mind murder, and sentenced to life imprisonment. He appeals from this judgment and sentence. We reverse and remand to the district court for a new trial.

This case presents the following issues:

(1) Did the district court commit reversible error when it refused to instruct the jury on homicide by vehicle by reckless driving, pursuant to NMSA 1978, Section 66–8–101 (Cum.Supp.1986) and NMSA 1978, Section 66–8–113, as a lesser included offense of depraved mind murder?

(2) Did the district court commit reversible error when it refused to instruct the jury on homicide by vehicle while under the influence of drugs, pursuant to NMSA 1978, Section 66–8–101 (Cum.Supp.1986), as a lesser included offense of depraved mind murder?

(3) Did the district court commit reversible error when it admitted, for purposes of impeachment, defendant's in-custody statement to police obtained in violation of the requirements of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)?

(4) Did the district court commit reversible error when it allowed cross-examination of defendant regarding his unauthorized departure from a Colorado juvenile detention facility six weeks before the incident for which defendant was tried?

(5) Was defendant denied a fair trial by statements in the prosecutor's closing argument describing defendant's acts in terms not identical to those of the jury instructions given by the district court?

We conclude that the district court should have instructed the jury on the lesser included offenses of vehicular homicide by reckless driving and vehicular homicide while under the influence of drugs. We therefore reverse the district court's judgment and sentence and remand this case for a new trial. Because similar evidentiary questions will arise on retrial, we also

consider the other issues raised by this appeal, discussing each of defendant's contentions separately.

## I. Failure to Instruct on Vehicular Homicide by Reckless Driving.

The facts of this case were described in detail in our *Omar-Muhammad I* opinion. The evening before Allen Gates Cross's death occurred on a two-lane state highway north of Clovis, New Mexico, the seventeen-year-old defendant accepted an offer to drive with a stranger, one Mr. Griffin, from his hometown of Oklahoma City, Oklahoma, to California. They left Oklahoma City in Mr. Griffin's red Mercedes between 11 and 12 o'clock the night of September 29, 1983.

Mr. Griffin drove from Oklahoma City to Amarillo, Texas, where he and defendant stopped and slept in the Mercedes for a couple of hours. Setting out again on Interstate 40 shortly after dawn, defendant drove from Amarillo to San Jon, New Mexico. As they drove, they shared a number of marijuana cigarettes. While Mr. Griffin was in a gas station restroom in San Jon, defendant took the car and headed southward.

Driving at sixty-five or seventy miles per hour, defendant first encountered a police vehicle some fourteen miles north of Clovis. He sped away at approximately 100 miles per hour, eluding the officers' attempt to chase him. They radioed ahead, and another officer set up a roadblock by parking his marked vehicle, with emergency lights blinking, in one lane of traffic, and positioning himself, with a gun, in the open lane. As he approached the roadblock, defendant neither stopped nor steered around the officer. He laid his head down on the seat and drove through the open lane of the roadblock, forcing the officer to get out of the way of the Mercedes. Continuing southward at a high rate of speed, defendant pulled into the northbound lane to pass a truck and remained in that lane until he forced a northbound police vehicle off the road. The officer driving that vehicle turned around and, with siren and emergency lights on, pursued defendant.

Further down the road, two police officers set up a two-car roadblock and positioned themselves on the pavement outside their vehicles. Defendant passed the vehicle immediately ahead of his and drove through this roadblock, again with his head on the seat, at approximately 100 miles per hour. When he cleared the roadblock, defendant was aware that he had hit one of the police cars and that his left front tire was damaged. Defendant did not try to stop his vehicle and was unable to control its swerving. The Mercedes hit a stationary hay truck, flew over an embankment into a field, and hit Cross and his motorcycle, killing the young man. The Mercedes continued across the field. When it finally came to rest, defendant emerged and attempted unsuccessfully to run away from the police.

Defendant testified that he did not see the young man or his motorcycle and that he did not know he had struck and killed Cross until he was apprehended by angered police officers. He asserted that he failed to see one of the police vehicles pursuing him, and the lights and markings on the others, because he was not wearing his eyeglasses. He claimed that he attempted to evade the roadblocks because he wanted to go home and was scared of being arrested, in possession of marijuana, by small-town police officers. Defendant believed he could get through the final roadblock because he had seen a vehicle ahead of him do so, and felt that he was driving safely at 95 to 100 miles per hour. He denied wanting to hurt anyone, including the officers at the roadblocks.

The only homicide charge filed against defendant was first degree depraved mind murder, pursuant to Subsection 30–2–1(A)(3). At trial, defendant tendered requested jury instructions on vehicular homicide by reckless driving, pursuant to Sections 66–8–101 and 66–8–113, as a lesser included offense of depraved mind murder. The district court refused to give these instructions, concluding that there was insufficient evidence to support a conviction

for the lesser offense. On appeal, defendant challenges that ruling.

In *Omar-Muhammad I*, this Court established that vehicular homicide by reckless driving is a lesser included offense of depraved mind murder. *See State v. Omar-Muhammad*, 102 N.M. at 278–79, 694 P.2d at 926–27. Comparing the relevant elements of each offense, we concluded that one cannot commit depraved mind murder without also committing vehicular homicide by reckless driving; therefore the lesser offense was "necessarily included" in the greater. *Id.* (citing *State v. DeMary*, 99 N.M. 177, 179, 655 P.2d 1021, 1023 (1982)).

■ In *Omar-Muhammad I*, we also reiterated the rule that the trial court must give instructions on a lesser included offense only where the evidence could support a conviction for the lesser offense. *Id.*, 102 N.M. at 279, 694 P.2d at 927. We concluded that the evidence offered at defendant's first trial was insufficient to support a conviction for vehicular homicide by reckless driving, and that the trial court therefore had not erred in refusing the defendant's requested instruction. *Id.* In most cases, however, it is for the jury to determine whether the defendant acted with the subjective knowledge of great danger to the lives of others required to establish depraved mind murder or merely with the mental state of conscious wrongdoing (i.e., whether he purposefully did an act the law declares to be a crime) required to establish vehicular homicide. *See State v. McCrary*, 100 N.M. 671, 673, 675 P.2d 120, 122 (1984); *cf. State v. Kappel*, 53 N.M. 181, 186–87, 204 P.2d 443, 446–47 (1949) (first and second degree murder). *See generally State v. Omar-Muhammad*, 102 N.M. at 278, 694 P.2d at 926 (elements of offenses).

■ We must look at all the evidence adduced in this trial in order to determine whether there was evidence from which the jury could have found that defendant purposefully did an act the law declares to be a crime but lacked a subjective knowledge of the risk posed by his acts. We conclude that there was such evidence, and that the district court therefore erred in refusing to instruct the jury on the lesser included offense of vehicular homicide by reckless driving. Its error cannot be considered harmless, *see State v. Reynolds*, 98 N.M. 527, 529, 650 P.2d 811, 813 (1982), so we reverse defendant's conviction and remand this case for a new trial.

## II. Failure to Instruct on Vehicular Homicide While Under the Influence of Drugs.

Defendant testified that when they left Oklahoma City, he and Mr. Griffin possessed about three-quarters of an ounce of marijuana. As they drove from Oklahoma City to Amarillo in the early hours of September 30, 1983, they smoked twelve to fifteen marijuana cigarettes. Back on the road at dawn, they smoked another four to six marijuana cigarettes between Amarillo and San Jon. Approximately one-half hour after defendant left San Jon alone, he sped through three roadblocks and into Cross.

The only direct testimony offered regarding the effect of this marijuana consumption on defendant was his statement that due to his own smoking, he probably could not tell if Mr. Griffin's driving during the night was impaired. Defendant did testify, however, to his thoughts and perceptions during his attempt to elude the police. The police vehicle he forced off the road seemed to lift up off the road and accelerate toward him. He felt that he was driving safely as he outraced the police vehicle on an unfamiliar highway, and he believed that he could safely negotiate the roadblocks by maneuvering in the same manner as slower-moving vehicles ahead. Furthermore, defendant repeatedly expressed his thought that, like in the movie "Smokey and the Bandit," he could get away if only there was a side road onto which he could turn.

At trial, defendant tendered requested jury instructions on vehicular homicide while under the influence of drugs, pursuant to Section 66-8-101, as a lesser included offense of depraved mind murder. The district court refused to give these instruc-

tions. On appeal, defendant challenges that ruling.

Whether vehicular homicide while under the influence of drugs is a lesser included offense of depraved mind murder presents a question of first impression for this Court; defendant did not seek instructions on this offense at his first trial. The instructions tendered by defendant at this trial required proof that "as a result of using a drug, [defendant was] less able, to the slightest degree, either mentally or physically, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to himself and others." SCRA 1986, 14–243. Because depraved mind murder can be committed without proof of such drug-induced impairment, vehicular homicide while under the influence of drugs is not necessarily included in the greater offense charged in the criminal information. *See State v. Omar-Muhammad*, 102 N.M. at 278, 694 P.2d at 926.

■ Nevertheless, we long ago said that " '[n]ecessarily included' fairly, *though perhaps not best,* expresses the relationship between [different degrees of homicide]." *State v. Burrus*, 38 N.M. 462, 471, 35 P.2d 285, 291 (1934) (emphasis added). We have analyzed felonious homicide, the unlawful taking of human life, as a "generic offense" encompassing several degrees or forms. *See id.,* 38 N.M. at 468, 35 P.2d at 289; *see also State v. Ulibarri,* 67 N.M. 336, 338, 355 P.2d 275, 276 (1960); *State v. Roy,* 40 N.M. 397, 412, 416–17, 60 P.2d 646, 655, 658 (1936); *cf. State v. King,* 90 N.M. 377, 379, 563 P.2d 1170, 1172 (Ct.App.1977) (open charge of murder), *overruled on other grounds, State v. Reynolds,* 98 N.M. 527, 650 P.2d 811 (1982). We repeatedly have held that it is error for the trial court to refuse to instruct on a degree of homicide for which there is substantial evidence, and error to submit a degree of homicide for which there is no evidence. *See Torres v. State,* 39 N.M. 191, 193, 43 P.2d 929, 930 (1935) (quoting *State v. Reed,* 39 N.M. 44, 47, 39 P.2d 1005, 1006 (1934)); *see also State v. Omar-Muhammad,* 102 N.M. at 279, 694 P.2d at 927; *Smith v. State,* 89 N.M. 770, 774, 558 P.2d 39, 43 (1976); *State*·

*v. Ulibarri,* 67 N.M. at 338, 355 P.2d at 276. Like first degree murder, second degree murder, voluntary manslaughter, and involuntary manslaughter, *see State v. McFall,* 67 N.M. 260, 265, 354 P.2d 547, 550 (1960), we believe that vehicular homicide under Section 66–8–101 is a degree of the generic offense of felonious homicide. *Cf. State v. Deming,* 66 N.M. 175, 177–78, 344 P.2d 481, 482–83 (1959); *State v. Sandoval,* 88 N.M. 267, 269, 539 P.2d 1029, 1031 (Ct. App.1975) (relationship between statutory offenses of vehicular homicide and involuntary manslaughter); SCRA 1986, 14–240 through 14–243 (uniform jury instructions on vehicular homicide compiled with other homicide instructions). We therefore hold that vehicular homicide while under the influence of drugs is a lesser included offense of first degree depraved mind murder.

■ The trial court must give requested instructions on vehicular homicide while under the influence of drugs as a lesser included offense only where the evidence could support a conviction for the lesser offense. *See State v. Omar-Muhammad,* 102 N.M. at 279, 694 P.2d at 927. On review, we must determine whether evidence was adduced in this trial from which the jury could have found that, as a result of using a drug, defendant's ability to drive safely was impaired to the slightest degree. *See State v. Deming,* 66 N.M. at 180, 344 P.2d at 484–85; *State v. Dutchover,* 85 N.M. 72, 73, 509 P.2d 264, 265 (Ct.App. 1973); SCRA 1986, 14–243. We believe that the evidence of defendant's use of marijuana the night before and the morning of the killing could have supported a conviction of vehicular homicide while under the influence of drugs. We therefore hold that the district court committed reversible error in refusing to instruct the jury on the lesser included offense.

### III. Admissibility of In-Custody Statement for Impeachment Purposes.

While in police custody on October 6, 1983, and after his request to speak to his parents and his lawyer had been denied, defendant gave a recorded statement to the

police. Early in the course of these proceedings, the defense moved the court to suppress that statement on the ground that it was elicited in violation of the requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Because the prosecution conceded that its admissibility was questionable and chose not to use the statement in the State's case in chief, no ruling on the motion was invoked. At trial, however, the prosecution obtained the court's permission and used the statement to impeach defendant's testimony during cross-examination. On appeal, defendant contends that his statement was involuntary and therefore inadmissible for impeachment purposes.

*Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), authorizes the prosecution to impeach the defendant's testimony by the use of prior statements inadmissible against him in the State's case in chief under *Miranda* if "the trustworthiness of the evidence satisfies legal standards." *Id.* at 224, 91 S.Ct. at 645. In order to meet the standard of trustworthiness, the statements must have been given voluntarily. *Mincey v. Arizona*, 437 U.S. 385, 398, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290 (1978); *Oregon v. Hass*, 420 U.S. 714, 722–723, 95 S.Ct. 1215, 1220–1221, 43 L.Ed.2d 570 (1975); *State v. Trujillo*, 93 N.M. 728, 730–31, 605 P.2d 236, 238–39 (Ct.App.1979), *aff'd on other grounds*, 93 N.M. 724, 605 P.2d 232 (1980). While due process of law ensures the defendant the right at some stage to object, to have a fair hearing on the issue of voluntariness, and to invoke a ruling by the trial court, it does not compel the court to conduct an evidentiary hearing in every case. *See State v. Trujillo*, 93 N.M. at 731, 605 P.2d at 239; *State v. Gallegos*, 92 N.M. 336, 340, 587 P.2d 1347, 1351 (Ct.App.1978); *see also Jackson v. Denno*, 378 U.S. 368, 376–77, 84 S.Ct. 1774, 1780–1781, 12 L.Ed.2d 908 (1964). *Compare Wainwright v. Sykes*, 433 U.S. 72, 86, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977) (if defendant does not object, *Jackson v. Denno* hearing is not required prior to admission in case in chief) *with Mincey v. Arizona*, 437 U.S. at 397 and n. 12, 98 S.Ct. at 2416 and n. 12 (*Jack-son v. Denno* hearing conducted prior to impeachment use).

■ The State here argues that defendant was not entitled to such a hearing because he failed to raise the issue of voluntariness at trial. The record is unclear and, because we have already determined that defendant's conviction must be reversed, we need not resolve this factual dispute. On retrial, if defendant properly raises the issue of voluntariness, the district court shall conduct an appropriate hearing. *See State v. Word*, 80 N.M. 377, 379–80, 456 P.2d 210, 212–13 (Ct.App.1969); *see also* SCRA 1986, 5–601 (pretrial motions). If the district court is satisfied that the statement was given voluntarily, it may be used for impeachment purposes.

## IV. Admissibility of Evidence of Defendant's Unauthorized Departure from Juvenile Detention Facility.

Before defendant testified, defense counsel made a motion in limine asking the district court to forbid the State from cross-examining defendant regarding his unauthorized departure from a juvenile detention facility in Colorado six weeks before the events leading to the conviction he now appeals. The district court ruled that defendant would subject himself to cross-examination regarding the Colorado incident if he elected to testify, and when defendant took the witness stand, he was cross-examined on this matter. On appeal, defendant contends he was denied his right to a fair trial by the erroneous admission of evidence of his prior acts.

■ Evidence admissible for one purpose is not to be excluded because it is inadmissible for another purpose. *State v. Wyman*, 96 N.M. 558, 560, 632 P.2d 1196, 1198 (Ct.App.1981). Even if evidence of prior juvenile adjudications is inadmissible under SCRA 1986, Rule 11–609(C) for the purpose of attacking the credibility of a witness, evidence of prior crimes and wrongs may be admissible under SCRA 1986, Rule 11–404(B) for other purposes, such as proof of motive, if it is probative of a material element at issue. *Cf. State v. McGhee*, 103

N.M. 100, 104, 703 P.2d 877, 881 (1985) (material element requirement).

■ The admission of evidence rests within the trial court's discretion and will not be disturbed absent an abuse of that discretion. *Id.* Although a specific intention or motive to kill is not an element of depraved mind murder, *State v. Johnson,* 103 N.M. 364, 368, 707 P.2d 1174, 1178 (Ct.App.), *cert. quashed,* 103 N.M. 344, 707 P.2d 552 (1985), we believe that the district court properly could have concluded that defendant's reasons for eluding the police were circumstantial evidence relevant to the jury's determination whether his acts indicated a depraved mind regardless of human life and whether he had a subjective knowledge of the risk involved in his actions. *Cf. State v. Omar-Muhammad,* 102 N.M. at 278, 694 P.2d at 926 (elements of offense). Furthermore, the record indicates that the district court here exercised its discretion carefully in determining that the probative value of this evidence was not substantially outweighed by its possible prejudicial effect. *See State v. McGhee,* 103 N.M. at 105, 703 P.2d at 882; SCRA 1986, 11–403. We cannot say that the district court abused its discretion in determining that evidence of defendant's unauthorized departure from the Colorado juvenile detention facility was admissible in accordance with Rules 11–404(B) and 11–403.

## V. Prosecutorial Misconduct in Closing Argument.

During closing argument, the prosecutor referred to defendant's "heedless and reckless disregard of human life" and stated that, "by doing an act of callous indifference, he caused the death of Allen Gates Cross." The defense made no objection to these statements during argument but, after the jury had retired, moved the district court to admonish the jury that the terms used by the prosecutor did not define a "depraved mind." The district court denied the motion. On appeal, defendant contends that he was denied his right to a fair trial by the prosecutor's attempts to instruct on the law.

■ The prosecutor is entitled to a reasonable measure of latitude in his closing remarks to the jury, and the district court has wide discretion in controlling closing arguments. *State v. Ruffino,* 94 N.M. 500, 503, 612 P.2d 1311, 1314 (1980). We believe that the prosecution remained within the bounds of proper argument to the jury. Moreover, even if we believed that the prosecutor's closing argument improperly invaded the province of the court by instructing on the law, *see State v. Payne,* 96 N.M. 347, 352, 630 P.2d 299, 304 (Ct.App. 1981), *overruled on other grounds, Buzbee v. Donnelly,* 96 N.M. 692, 634 P.2d 1244 (1981), we could not say that the prosecutor's use of several adjectives of his choice so influenced a jury correctly instructed on the law by the district court as to have deprived defendant of a fair and impartial trial. *Cf. State v. Taylor,* 104 N.M. 88, 95, 717 P.2d 64, 71 (Ct.App.), *cert. denied,* 103 N.M. 798, 715 P.2d 71 (1986) (single remark referring to facts outside the evidence); *State v. Vallejos,* 98 N.M. 798, 801, 653 P.2d 174, 177 (Ct.App.), *cert. denied,* 99 N.M. 47, 653 P.2d 878 (1982) (jury properly instructed on the law).

In conclusion, we hold that the district court erred in refusing to instruct the jury on, first, vehicular homicide by reckless driving and, second, vehicular homicide while under the influence of drugs, because each is a lesser degree of felonious homicide and a lesser included offense of the crime with which defendant was charged, first degree depraved mind murder, and because the evidence could have supported a conviction for either vehicular homicide offense. Defendant's conviction therefore must be reversed.

We further hold that the district court was authorized to admit, for purposes of impeachment, a voluntary, in-custody statement elicited from defendant in violation of the requirements of *Miranda.* Without deciding whether due process of law required an evidentiary hearing in this case, we hold that the defendant is entitled to a fair hearing and a ruling by the trial court if he properly raises the issue of voluntariness. We hold that the district court did not err

in admitting evidence of defendant's unauthorized departure from a juvenile detention facility for the purpose of proving a material issue under Rule 11-404(B), even though that evidence might not be admissible for impeachment purposes under Rule 11-609(C). Finally, we hold that defendant's right to a fair trial was not denied by the prosecutor's choice of adjectives in his closing argument.

For the foregoing reasons, the judgment and sentence of the district court is reversed, and this case is remanded for a new trial.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and WALTERS, J., concur.